IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SIRAJ WAHHAJ,

    Plaintiff,

v.                                                                      No. 23-cv-0680-KWR-LF

CIBOLA COUNTY CORRECTIONAL CENTER, *et al*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    This matter is before the Court on Plaintiff Siraj Wahhaj's Amended Civil Rights Complaint (Doc. 3) (Complaint). Plaintiff is incarcerated, *pro se*, and proceeding *in forma pauperis*. He alleges officials at the Cibola County Correctional Center (CCCC) violated his constitutional rights in a myriad of ways while he prepared for his federal criminal trial. Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915(e), the Court will dismiss the Complaint but grant leave to amend.

## BACKGROUND

    Plaintiff is a federal inmate. He was previously detained at CCCC while awaiting his federal trial in 18-CR-2945 WJ. Plaintiff elected to proceed *pro se* in connection with those criminal charges. A jury convicted Plaintiff of conspiring to provide material support to terrorists (18 U.S.C. § 2339A) and conspiring to murder a federal officer (18 U.S.C. § 1117). The Court (Hon. William Johnson) sentenced Plaintiff to life imprisonment. *See* Doc. 1165 in 18-CR-2945 WJ.

    The instant civil Complaint (Doc. 3) consists of 230 pages. It primarily focuses on the alleged lack of access to legal materials - which Plaintiff believes caused his federal convictions -

and the fact that CCCC officials allegedly mishandled the grievance process. Beyond those claims, the Complaint touches on all aspects of prison life and sets out a detailed list of each grievance Plaintiff filed in CCCC. It appears he filed over 25 grievances while in pretrial custody. They allege, inter alia:

(1) Plaintiff did not receive education certificates after completing certain courses.

(2) Detainees received "chemicals … in the water in the height of [the] COVID outbreak."

(3) Prison officials failed to provide the results of blood tests or treat Plaintiff's long COVID symptoms.

(4) Medical staff failed to see Plaintiff for his abnormal kidneys.

(5) Prison officials would not allow Plaintiff to fax or email filings to the Court.

(6) Prison officials would not allow Plaintiff to file online applications with the Department of Homeland Security and the Traveler's Redress Inquiry Program and instead forced him to file the applications via mail.

(7) Cleaning and hygiene supplies were rationed, and Plaintiff only received one pair of socks.

(8) The showers at CCCC sometimes did not work, and at one point there was no hot water for three days.

(9) Prison officials sometimes prevented Plaintiff from using the law library; delayed certain printing jobs; and dumped legal materials on his bed.

(10) Plaintiff was handcuffed for two hours at one point, which caused pain.

(11) Food trays were sometimes delivered late during Ramadan, and prison officials

allegedly failed to provide a religious meal celebrating Eidul Ahad.[1]

(12) CCCC implemented a Tier Management Policy, which allegedly violates due process principles.

*See* Doc. 3 at 41-60.

It is difficult to discern the exact nature of the legal claims, based on the extensive list of grievances. Construed liberally, and at a minimum, the Complaint appears to raise First Amendment claims for denial of access to courts and violation of religious freedoms; Eighth Amendment claims for deliberate indifference to health/safety; and Due Process claims regarding the failure to follow grievance procedures and the imposition of tier restrictions. The Complaint also raises New Mexico tort claims for negligent hiring and supervision of CCCC officials. Plaintiff names Defendants CCCC; Core Civic/CCA; and Warden Mark Foreman.

The Court granted leave to proceed *in forma pauperis* and assessed an initial filing fee pursuant to 28 U.S.C. § 1915(b). *See* Doc. 5 (IFP Order). The IFP Order was initially returned as undeliverable based on a prison transfer, and Plaintiff paid the initial partial filing fee late. He filed a Motion to Extend the Initial Payment Deadline (Doc. 8) along with the initial payment. The Court will grant that motion, as Plaintiff has materially complied with § 1915. The Complaint is ready for initial review under 28 U.S.C. § 1915(e).

## STANDARDS GOVERNING INITIAL REVIEW

Section 1915(e) of Title 28 requires the Court to conduct a *sua sponte* review of all *in forma pauperis* complaints. The Court must dismiss any complaint that is frivolous, malicious, or fails

---

[1] Such allegation may refer to Eid al-Adha, the Muslim Feast of Sacrifice, but the Court will use the name provided in the Complaint.

to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e). The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted). The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

All complaints filed in Federal Court must also comply with Fed. R. Civ. P. 8(a). Under that rule, a pleading must contain "a short and plain statement" of the grounds for relief, and "[e]ach allegation must be simple, concise, and direct." Rule 8(a)(2). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall,* 935 F.2d at 1110. While *pro se* pleadings are judged by the same legal standards as others, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, …, or … unfamiliarity with pleading requirements." *Id.* Moreover, if a *pro se* inmate complaint fails to state a claim on initial screening, courts should generally grant leave to amend should unless amendment would be futile. *Id.*

**DISCUSSION**

Plaintiff's 230-page Complaint raises a myriad of claims under 42 U.S.C. § 1983 and New Mexico law. For the reasons below, the Court finds the Complaint fails to set forth a short and plain statement of relief, as required by Rule 8(a). Alternatively, to the extent the primary claims are discernable, the Complaint fails to state a cognizable § 1983 claim. The Court will address each ground for dismissal below.

## I. The Complaint Fails to Satisfy Rule 8(a)

The Complaint functions as a classic "kitchen-sink" or "shotgun" filing, which canvasses every aspect of Plaintiff's detention and re-asserts every grievance he filed against CCCC. *See Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) ("The law recognizes a significant difference between notice pleading and 'shotgun' pleading."). Because the grievances raise facts that do not relate to Plaintiff's list of legal causes of action, it is difficult to discern which claims he intends to pursue. Moreover, the Complaint purports to incorporate over 160 pages of exhibits to support the factual allegations. *See* Doc. 3 at 54 (stating Plaintiff "outlined dates and who did what … with the attachments"). It "is not the role of … the court … to sort through … voluminous exhibits … to construct plaintiff's causes of action." *McNamara v. Brauchler*, 570 Fed. App'x 741, 743 (10th Cir. 2014) (citations omitted). The Complaint is therefore subject to dismissal for failure to comply with Rule 8(a).

## II. The Complaint Fails to State a Cognizable § 1983 Claim

Alternatively, to the extent certain claims are discernable, the factual narrative fails to demonstrate a federal claim under 42 U.S.C. § 1983. The primary claims include First Amendment claims for denial of access to courts and violation of religious freedom; Eighth Amendment claims

for deliberate indifference to health/safety; and Due Process claims regarding the failure to follow grievance procedures and the imposition of tier restrictions.

*A. First Amendment Claims*

Under the First Amendment, an inmate must receive "a reasonably adequate opportunity to present claim[s] … to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). The right focuses on the "conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (a § 1983 plaintiff must demonstrate he was effectively "shut out of court"). The constitution does not require jails "to supply legal assistance beyond the preparation of initial pleadings," *Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995), nor does it guarantee that inmates can "*litigate effectively* once in court." *Lewis*, 518 U.S. at 354 (emphasis in original).

Claims pertaining to lack of legal materials are difficult to establish, as there is no "abstract, freestanding right to a law library or legal assistance" provided the inmate has some method of filing an opening petition. *Lewis*, 518 U.S. at 354. *See also Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) ("[T]he constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a law library, and inmates do not have the right to select the method by which access will be provided."). Said differently, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Clark*, 577 Fed. App'x 786, 796 (10th Cir. 2014) (quotations omitted).

Beyond demonstrating a lack of access, a plaintiff must show the deficient law library

6

"prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). "Conclusory allegations of injury in this respect will not suffice." *Wardell v. Duncan*, 470 F.3d 954 (10th Cir. 2006). *Cf Lewis,* 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing [the] … legal assistance program is subpar in some theoretical sense."). Plaintiffs must allege specific facts about how the legal research issues prevented them from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Lewis*, 518 U.S. at 355.

Plaintiff primarily alleges he was convicted in his federal case due to the inadequate law library/legal resources and because CCCC would not allow him to file documents electronically. Plaintiff waived his Sixth Amendment right to counsel and chose to appear *pro se* in the criminal case. The Court (Hon. William Johnson) appointed standby counsel to assist as needed. *See* Doc. 786 in 18-CR-2945 WJ. "It is well established that providing legal counsel," including standby counsel, "is a constitutionally acceptable alternative to a prisoner's demand to access a law library." *United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999) (*citing* Lewis, 518 U.S. at 350-51); *United States v. Stanley*, 385 Fed. Appx. 805, 807-08 (10th Cir. 2010) ("Providing standby legal counsel for assistance at trial is the equivalent of allowing library access ... [a]nd in any event, a trial court is under no obligation to provide law library access to a prisoner who voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding.")(internal quotations and citation omitted).

Consistent with this authority, CCCC was not required to make exceptions to their rules governing legal research and online filing based on Plaintiff's choice to proceed *pro se*. Moreover, the Complaint does not show the lack of legal access – rather than Plaintiff's own decision to

proceed *pro se* in the face of serious charges – caused the criminal convictions.  To the extent Plaintiff generally alleges prison officials prevented him challenging his conditions of confinement, there are insufficient factual details to support this claim.  The Complaint therefore fails to state a cognizable claim for lack of access to courts.

With respect to the First Amendment religious freedom claim, the inmate-plaintiff must plead facts allowing an inference that the prison regulation at issue "substantially burdened sincerely-held religious beliefs."  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  A prison action that substantially burdens beliefs is nonetheless valid "if it is reasonably related to legitimate penological interests."  *Id.* (internal quotation marks omitted).  As a result, an inmate "must also plead facts from which a plausible inference can be drawn that the allegedly impinging action was not reasonably related to a legitimate penological interest."  *Blair v. Raemisch*, 804 Fed. App'x 909, 916 (10th Cir. 2020) (quoting *Gee v. Pacheco,* 627 F.3d 1178, 1187-88 (10th Cir. 2010)).  *See also Al-Owhali v. Holder,* 687 F.3d 1236, 1240 (10th Cir. 2012) (In an analysis under Rule 12(b)(6), "a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest.").  Legitimate penological interests include "security, order, and rehabilitation."  *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).

The Complaint here alleges Plaintiff's Ramadan trays were delivered late and that he was not served a meal celebrating Eidul Ahad.  *See* Doc. 3 at 45, 47.  There is no additional context explaining how these circumstances burden Plaintiff's religious beliefs.  It is also difficult to discern whether the alleged violations relate to a penological interest.  The Complaint therefore fails to state a claim for First Amendment religious violations.

*B. Eighth Amendment Claims*

The Eighth Amendment requires prison officials ensure inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). This includes the provision of medical care, under certain circumstances, and safe conditions of confinement. *Id.* To demonstrate an Eighth Amendment violation, the alleged deprivation must be objectively serious, and the prison official must "have a sufficiently culpable state of mind." *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir.1998). Conditions are objectively serious when they threaten the inmate's safety or "lead to deprivations of essential food, medical care, … [or] sanitation." *Rhodes,* 452 U.S. at 348. In the context of medical care, the objective prong is satisfied "if a physician directed further treatment after diagnosing the condition or the need for a doctor's attention would be obvious to a lay person." *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021). To satisfy the subjective component, the plaintiff "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006) (quotations omitted).

The discernable facts here show prison officials allowed some "chemical" to exist in the water supply; rationed COVID treatments, testing, and cleaning supplies; failed to treat unspecified long covid symptoms; failed to examine an unspecified kidney problem; failed to provide hot water for three days; and failed to provide a "complete hygiene" kit. These facts are too conclusory to show Plaintiff was subjected to a serious risk of harm or that any Defendant was subjectively aware of a risk. *See DeSpain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (stating that an inmate must "show that conditions were more than uncomfortable," they must "instead ... [impact] health or safety"). Plaintiff also alleges he was handcuffed for two hours, presumably during a CCCC

9

lockdown.  Prolonged use of handcuffs can demonstrate a constitutional violation if it causes severe pain or lasting injury.  *See, e.g., Miller v. Glanz*, 948 F.2d 1562, 1570 (10th Cir. 1991) (handcuffing an inmate in an awkward position for almost two hours did not cause the severe pain or lasting injury required to establish an Eighth Amendment violation).  Even assuming these facts could satisfy the objective prong of the Eighth Amendment test, the Complaint fails to name the individuals involved in the handcuffing incident or show any Defendant was subjectively aware of the harm.  The Complaint fails to demonstrate an Eighth Amendment violation.

    *C. Due Process Claims*

To the extent the due process claims are discernable, the Complaint appears to challenge CCCC's grievance process and tier restrictions.  As to the first claim, the Tenth Circuit has repeatedly held "there is no independent constitutional right to [effective] … administrative grievance procedures."  *Boyd v. Werholtz*, 443 Fed. App'x 331, 332 (10th Cir. 2011) (collecting cases).  *See also Von Hallcy v. Clements*, 519 Fed. App'x. 521, 524 (10th Cir. 2013) (rejecting prisoner's claim that prison director violated due process by providing him with an inadequate prisoner grievance reporting system); *Merryfield v. Jordan*, 431 Fed. App'x. 743, 749-50 (10th Cir. 2011) (same); *Ciempa v. Ward*, 150 Fed. App'x. 905, 906-07, 909 (10th Cir. 2005) (same); *Anderson v. Colo. Dep't of Corr.*, 185 F.3d 873, * 2 (10th Cir. 1999) (prisoner's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest").

As to the tier restrictions, an inmate may demonstrate a due process claim if the restriction "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner,* 515 U.S. 472, 484 (1995).  A pretrial detainee can also establish

prison restrictions violate the due process clause by showing: (1) the restrictions were imposed with "an expressed intent to punish[;]" or (2) the "restriction or condition is not reasonably related to a legitimate goal." *Colbruno v. Kessler*, 928 F.3d 1155, 1162–63 (10th Cir. 2019). Because the Complaint fails to describe the exact nature of CCCC's tier restrictions, the Court is unable to determine whether such restrictions violate due process principles. *See Jackson v. Ward,* 159 Fed. App'x 39, 41 (10th Cir. 2005) (affirming dismissal of due process claim where "complaint does not provide any specifics concerning the" prison restrictions or "anything about how his situation was atypical"). The Complaint therefore fails to state a cognizable due process claim.

### III.     The Complaint Will Be Dismissed With Leave to Amend

In sum, the Court will dismiss the Complaint for failure to comply with Rule 8(a) and, alternatively, dismiss all federal claims for failure to state a cognizable claim under 42 U.S.C. § 1983. The Tenth Circuit counsels that "if it is at all possible that [the *pro se* inmate] can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *See Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). The Court will permit Plaintiff to file a single, amended complaint within thirty (30) days of entry of this Order. The amended complaint may not exceed 40 pages and should include all state and federal claims Plaintiff intends to pursue in this case. The Court will decide whether to exercise supplemental jurisdiction over Plaintiff's state law claims until after it reviews any amended complaint. If Plaintiff fails to timely amend or files another complaint that fails to comply with Rule 8(a) or state a federal claim, the Court may dismiss all federal claims with prejudice; decline to exercise supplemental jurisdiction; and dismiss any state law claims without prejudice.

**IT IS ORDERED** that Plaintiff's Motion for Extension to Pay Filing Fee (**Doc. 8**) is

**GRANTED**; his Amended Civil Rights Complaint (**Doc. 3**) is **DISMISSED without prejudice**; and within 30 days of entry of this Order, Plaintiff may file an amended complaint as set forth above.

    **SO ORDERED**.

                                                                         _____/S/_____
                                                                 HON. KEA RIGGS
                                                                 UNITED STATES DISTRICT JUDGE